NOE *vs.* TAYLOR.

EASTERN DIST.
*April*, 1839.

NOE
*vs.*
TAYLOR.

APPEAL FROM THE COURT OF THE FOURTH JUDICIAL DISTRICT, FOR THE PARISH OF POINTE COUPEE, THE JUDGE OF THE SECOND PRESIDING.

In a contract of sale of a plantation and slaves, in which the vendee paid four thousand five hundred dollars in cash, and it was stipulated that the vendor should make a title in fee simple the 1st of January following, when the balance of the price was to be paid and arranged, and on failure of the vendee to comply with his engagement, the sum already paid was to be forfeited to the vendor, to indemnify him for the chances of making a better sale: *Held*, that the contract was absolute, with the single exception, that it could not be enforced against the vendee if he failed to comply, but that the partial payment he had made, was to be considered the measure of damages for his non-performance.

When the resolutory condition in a contract, depends on the will of either party, the contract is not dissolved of right, by the happening of the condition, but its dissolution must be sued for, in all cases when it embraces immoveable property.

Good faith in a contract is always presumed, and the court will consider itself bound to believe the contracting parties understood each other, and that the vendor disclosed the truth in relation to the thing sold, when it is not otherwise shown.

This case was before the Supreme Court in February, 1838, and remanded for a new trial. See 11 *Louisiana Reports,* 551.

The facts of the case and the written contract between the parties, are fully stated and set forth in the former report, and need not be again stated.

The suit was instituted by Noe, to recover back the sum of four thousand five hundred dollars, which he had advanced to Taylor, in July, 1836, at the time of entering into the agreement to purchase from him the plantation and slaves mentioned therein. The written agreement contains the following clause, under which the contest arises in this case: Taylor stipulated "to make to said Noe a title in fee simple to said tract of land, on the 1st of January, and at the same time, such title to said slaves as is above expressed: *Provided,* said Noe shall faithfully comply with the agreements and

covenants above and herein expressed. It is, also, hereby understood, agreed and declared, by and between said parties, that in the event of said James Noe not complying with his said engagements and covenants, on said 1st day of January next, *he forfeits* said sum of four thousand five hundred dollars, and that said Taylor may convert this sum to his own use, to indemnify himself for the chances of making a better sale of his property."

It seems that Noe, the vendee, failed and refused to execute the contract on the 1st of January, 1837, according to the stipulations contained in the written agreement of July preceding, alleging that the premises were encumbered with mortgages, so as to prevent the vendor from making a complete title.

On the return of the case, it was submitted to a jury, and several witnesses called to testify in relation to the understanding of the contracting parties at the time of the agreement. It appeared in evidence, that Taylor explained to Noe at the time, that there were some incumbrances on the land, and that the title to the slaves depended on the construction to be given to the will of the late Julien Poydras. It did not result from the testimony, that there was any deception or fraud on the part of the vendor. After a charge from the judge presiding, the jury returned a verdict for the defendant. From judgment rendered thereon, the plaintiff appealed.

*A. N.* and *F. N. Ogden*, for the plaintiff, contended that Noe was not bound to take the property subject to the mortgages existing on it, and give his notes for the balance ; and the doctrine relied on in the case of *Borden* vs. *Borden*, 5 *Massachusetts Reports*, 67, that incumbrances existing on property do not authorize the purchaser to repudiate the title, is not law in this state.

2. From the amount and nature of the mortgages in this case, such a rule could not be applied without evident injustice to the purchaser, in forcing on him stipulations altogether different from the contract he had entered into. The con-

tract under consideration, we contend, does not amount to a sale, and does not entitle the party to a specific performance. The penalty stipulated by the purchaser, is in the nature of *earnest* money, which one of the parties has given and must forfeit on failure to comply ; but such a contract is not a sale. The existence of mortgages on the property, which would be good ground to suspend payment in case of an actual sale, would be sufficient ground before the sale to authorize the purchaser to withdraw from the contract. *Louisiana Code, article* 2438. 1 *Peters,* 462, 4 *and* 5.

3. If any or all of these positions should be deemed untenable, we contend that the purchaser could not, in this case, have been required to execute the contract by retaining the amount of mortgages, because he would have been thus compelled to pay a larger amount in cash, than he was bound by his contract to do, and the terms of the contract would have been altogether changed.

By an inspection of the certificate of mortgages, it will appear that the property was mortgaged in favor of the Union Bank, for a large amount of shares in the stock of that bank. That mortgage could not be removed for an almost indefinite period of time, unless other property, by the consent of the bank, was substituted in its place. The evidence, therefore, clearly shows that the rule contended for, could not be applied to this case, because the mortgages already due, exceeded the cash payment; and because the mortgage to secure bank stock, would have existed after the whole price was paid.

4. We contend, lastly, that under the contract between these parties, it was necessary that Noe should have been put in *default*, and that he was not put in default by Taylor; nor is there any thing to excuse the want of it. The evidence shows that on the day of sale Taylor remained at home until summoned by Noe's agent to repair to the parish judge's office ; going there at his request, and treating with him as agent, he cannot now question his power of attorney. The mortgages, to a large amount, appeared on the books of the recorder of mortgages. Taylor had prepared no state-

ment of the mortgages; he asked where the money and notes were.

There can be no doubt that Taylor claims to retain the four thousand five hundred dollars, as damages for the passive breach of a contract, and the amount of these damages are fixed in the contract itself. The obligation of Noe was not absolute and independent, but the engagements of each party were necessarily dependent; to put Noe in default, it was necessary, 1st, That Taylor should have been able to comply with his engagements. 2d, That he should have put Noe in default, in one of the ways declared in article 1905 of the Louisiana Code.

*Mitchell*, for the defendant. The plaintiff did not attend on the 1st of January, 1837, to comply with his contract. The evidence shows that he resided in Mississippi, but he should have then attended and claimed a compliance by making the payments, or showing his readiness to pay. 2 *Marshall's Reports*, 168. 2 *Johnson*, 145. 5 *Massachusetts Reports*, 67.

2. In the absence of Noe, it was impossible for Taylor to tender a deed for the land and slaves, (even if it was necessary, which is denied;) and under these circumstances, it is the same as if the tender had been made. Taylor could have made a good and valid title, notwithstanding the mortgages, for they do not by any means amount to a defect of title. The law only requires that the title to the property should be a good one. The vendor is permitted to pay off the incumbrances or debts, with the money he receives, or allow the purchaser to retain the amount. See the case of *Borden* vs. *Borden*, 5 *Massachusetts Reports*, 67—75, et seq.

*Rost, J.*, delivered the opinion of the court.

The facts of this case are stated at length in the report of the decision of this court, on a former appeal.

The plaintiff and defendant entered into a written agreement, which has all the essential requisites of a sale. The plaintiff binds himself therein to pay the defendant the sum

of one hundred and thirty thousand dollars, for a plantation and slaves, in the following manner: four thousand five hundred dollars cash in hand, paid, the receipt of which is acknowledged in the deed; twenty-five thousand dollars payable in gold or silver, on the 1st of January next following, and the balance in endorsed notes, to be delivered on the same day. On that day, also, possession is to be given, and a title *in fee simple* is to be made by the defendant; and the plaintiff further stipulates, that if he does not comply with his agreements and covenants, on the said 1st day of January, he forfeits the sum of four thousand five hundred dollars, and the defendant may convert it to his own use, to indemnify him for the chances of making a better sale of his property.

The plaintiff did not comply with his agreements and covenants at the time appointed, and the defendant, considering the contract avoided as a sale, or a promise to sell, by the happening of the resolutory condition attached to it, retains the sum which the plaintiff agreed to forfeit, if he permitted that condition to happen.

The plaintiff sues to recover back that sum, on the ground that on the day appointed for the delivery of the plantation and slaves to him, the property was encumbered by several special mortgages, and particularly by one in favor of the Union Bank, to secure a large number of shares of the stock of that institution, which mortgage could not be raised, so as to enable the defendant to give him a title in fee simple on that day.

This is not an action for the rescission of the contract: the plaintiff takes for granted, that the contract no longer exists, and our first inquiry must be how it has been dissolved, for as long as it endures, it is the law of the parties.

It is clear to us, that the sum paid by the plaintiff cannot be considered as *earnest money;* it was not so characterized in the deed, and was simply paid as a part of the purchase money. We cannot now presume the existence of stipulations which the parties did not expressly make, and we are of opinion that the vendor could not evade the specific perform-

EASTERN DIST. ance of his part of the contract, by returning to the pur-
*April*, 1839. chaser double the sum he had received, or in any other

NOE
*vs.*
TAYLOR.

manner. That contract was absolute, with the single excep-
tion, that if the plaintiff failed to execute it, it could not be
enforced against him, and the partial payment which he had

When the re-
solutory condi-
tion in a con-
tract, depends
on the will of
either party, the
contract is not
dissolved of
right by the hap-
pening of the
condition, but
its dissolution
must be sued for
in all cases when
it embraces im-
moveable pro-
perty.

made, was to be the measure of damages for his non-
performance. But even in that case, the contract was not
dissolved of right, by the happening of the condition. When
the resolutory condition is an event depending on the will of
either party, the dissolution of the contract must be sued for
*in all cases*, when it embraces immoveable property, and the
party in default, may, according to circumstances, have a
further time allowed for the performance of the condition.
*Louisiana Code, article* 2042. Here the *fact of* the perform-
ance or non-performance of the plaintiff, depended exclusively
upon his own will, and the contract exists until it is dissolved
by a judgment.

Had an action for a rescission been instituted, it could not
have been maintained. The facts proved at the last trial,
by the witness Coyle, that the defendant fully explained to
the plaintiff the will of Julien Poydras, and informed him
that mortgages existed upon the property, stand uncontra-
dicted and unopposed, and are conclusive against the plain-
tiff. He had been informed before the sale, of the danger of

Good faith in
a contract is al-
ways presumed;
and the court
will consider it-
self bound to be-
lieve the con-
tracting parties
understood each
other, and that
the vendor dis-
closed the truth
in relation to the
thing sold, when
it is not other-
wise shown.

the eviction, and he could not suspend the payment of the
price on that account. *Louisiana Code, 2535*. It is true
that the witness does not remember that the defendant men-
tioned to the plaintiff the exact amount of the mortgages,
nor does it appear in evidence that the mortgage given to
secure the stock of the Union Bank was named particularly;
but *good faith is always presumed*, and we are bound to be-
lieve that the defendant told the plaintiff the whole truth on
the subject. If it was otherwise, it is the plaintiff's fault that
it does not so appear before us. The witness was not cross-
examined, in reference to these particular facts, and we must
take his evidence without any *restriction or limitation*.

It is, therefore, ordered, adjudged and decreed, that the

judgment of the District Court be affirmed, with all the costs in both courts, except that of the first appeal.

*Eustis, J.*, delivered a separate opinion.

My construction of the contract is this : I consider that Noe, if he should determine not to take the plantation of Taylor, was to give Taylor four thousand five hundred dollars, for having the refusal of it from the 21st of July to the 1st of January following, during which time Taylor could not sell, and Noe would have the chances of offering his bargain for sale. Taylor would not have bound himself without compensation, and it is expressly stated in the contract, that this sum of four thousand five hundred dollars was to indemnify him for the chances of making a better sale of his property. I, therefore, infer, that this was the consideration of the contract, so far as it relates to that sum. The property might rise, Taylor might have a better offer, and he would not deprive himself of the chances of a better sale, unless there was a certain sum paid as an indemnity for losing them.

My opinion is, that Noe, in a breach of the contract on his part, was bound for nothing more than the four thousand five hundred dollars ; that this is the limit of his responsibility.

After this agreement, we hear nothing more of the plaintiff : his residence, it appears, was in Mississippi ; on the day fixed for the completion of the sale, Noe did not make his appearance. A gentleman of the bar presented himself on his behalf, but no authority is shown on his part to conclude the contract, or to bind his principal in any manner. I am satisfied from the testimony of Coyle, that Noe knew perfectly well that the estate was encumbered with mortgages, and that his disinclination to complete the purchase, originated from causes entirely independent of their existence. If Noe wanted to complete the purchase, or to comply with his contract, he ought to have been present himself, or by an attorney in fact, specially authorized, and complied, or offered to comply with with the requisites of articles 1906 and 1907 of the Code. From his conduct, I infer his understanding of

the contract, was, that he was not bound to comply with it, having left in the hands of Taylor the sum of four thousand five hundred dollars as an indemnity for losing the chances of a sale.

My opinion on this subject is confirmed by the well known fact, of the existence in this country in 1836, of that spirit of speculation which predominated in every contract made under its influence, changing not only its forms, but producing consequences until then unforeseen. Such being my convictions of the intention of the parties, and such the legal intendment of the contract, I think the judgment of the court below ought to be affirmed with costs.